Reba CARTER, Plaintiff–Appellant,

v.

NEW VENTURE GEAR, INC., Diamler Chrysler Corporation, Mike Allen, as President of United Automobile, Aerospace and Agricultural Implement Workers of America Local 624, and Stephen Yokich, as President of the International Union, United Automobile Aerospace and Agricultural Implement Workers of America, Defendants–Appellees.

No. 07–4672–cv.

United States Court of Appeals, Second Circuit.

Feb. 18, 2009.

K. Felicia Davis, Syracuse, NY, for Appellant.

John T. McCann, (James P. Youngs, on the brief), Hancock & Estabrook, LLP, Kenneth L. Wagner, Blitman & King LLP, Syracuse, NY, for Appellees.

Present: Hon. RICHARD C. WESLEY, Hon. DEBRA ANN LIVINGSON, Circuit Judges, Hon. JANE A. RESTANI,* Judge.

## SUMMARY ORDER

Reba Carter appeals the order of the United States District Court for the Northern District of New York (Mordue, *J.*) granting summary judgment in favor of defendants-appellees. Carter had brought suit in the district court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e–17 (collectively "Title VII"); *id.* §§ 1981, 1981A (collectively

---

* The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

" § 1981"); *id.* §§ 158,185, alleging that her employer, New Venture Gear, Inc. and Daimler Chrysler Corp. (collectively "NVG"), committed racial discrimination, disparate treatment, and created a hostile work environment through racial and sexual harassment, and that her union, the United Automobile, Aerospace and Agricultural Implement Workers of America Local 624, and its international affiliate, United Automobile, Aerospace and Agricultural Implement Workers of America (collectively the "Union") breached the duty of fair representation. Carter appeals the dismissal of all claims.[1] We assume familiarity by the parties as to the facts, the procedural context, and the specification of appellate issues.

This Court reviews de novo the district court's grant of summary judgment, construing presented evidence and resolving ambiguities in a light most favorable to the nonmoving party. *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir.2007). Summary judgment is only warranted upon a showing by the movant "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## I. Claims Against NVG

### A. Dismissal of Title VII Claims

To make out a prima facie case under Title VII, a plaintiff must show: (1) she is a member of a protected class; (2) she is qualified to perform the job in question; (3) there was an adverse employment action; and (4) circumstances supporting an inference of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing, inter alia, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once a plaintiff establishes a prima facie Title VII case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision at issue. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If the employer satisfies this requirement, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer was acting with pretext. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 530, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 1. Racial Discrimination

Applying the *McDonnell Douglas* analysis to the case at bar, it is undisputed that the plaintiff, as an African American, is a member of a protected class, and the district court found that she had made the minimal showing needed to satisfy the second element of the test.

---

1. Carter also brought claims against NVG and the Union under New York State law for assault and battery, intentional infliction of emotional distress, negligent infliction of emotion distress, and breach of contract. *Carter v. New Venture Gear, Inc.*, No. 5:00–CV–1744, 2007 WL 2847217, at *10–*11 (N.D.N.Y. Sept.26, 2007). The district court dismissed these claims, however, because Carter failed to respond to the defendants' motions for summary judgment insofar as they sought dismissal of these claims. *Id.* Carter attempts to appeal the dismissal of her claims for negligent infliction of emotional distress and intentional infliction of emotional distress by addressing them in her reply brief. However, this Court generally does not consider issues raised for the first time in a reply brief. *In re Harris*, 464 F.3d 263, 268 n. 3 (2d Cir.2006). We decline to do so here. *See, e.g., Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999).

*Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 91–92 (2d Cir.2001). However, Carter failed to present evidence sufficient to establish that the third or fourth elements of the *McDonnell Douglas* test were satisfied with respect to NVG's job assignment to Carter. Carter failed to raise any genuine issue that NVG's measures constituted an adverse employment action against her. Carter did not meet her burden of raising a genuine issue of material fact that her assignment to an admittedly equally paying and comparable job was "materially less prestigious, materially less suited to [her] skills and expertise, or materially less conducive to career advancement." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 641 (2d Cir. 2000). Nor do the circumstances surrounding Carter's allegations give rise to an inference of race discrimination. No assertions made by the plaintiff support the notion that NVG contemplated race in her assignment. Furthermore, even assuming that plaintiff had made out a prima facie case, NVG has met its burden of articulating a legitimate, nondiscriminatory reason for its actions, namely, Carter's perceived lack of productivity and extended absences, and Carter has failed to demonstrate that the reason given was pretext. Thus, Carter has not met her ultimate burden of showing that she has been the victim of racial discrimination.

## 2. Disparate Treatment

■ A plaintiff alleging discrimination based on disparate disciplinary treatment must demonstrate, in applying the *McDonnell Douglas* test, that she was subject to an adverse employment action "and that a similarly situated employee not in the relevant protected group received better treatment." *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir.2001). Specifically, a plaintiff must show that she engaged in an act of "comparable seriousness," but was punished more severely than similarly situated coworkers based on an application of disciplinary rules or a code of conduct. *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir.2000).

As the district court pointed out, Carter has provided no evidence that similarly situated black workers were punished differently than white coworkers for actual, comparable incidents. Carter states she reported to an apparently indifferent management that a white coworker was smoking marijuana on the job, though she does not provide analogous occurrences involving black employees smoking marijuana that would support disparate treatment based on race. Furthermore, no reasonable factfinder would infer disparate treatment from NVG promptly calling police when an employee threatened to shoot coworkers, but "only" holding a departmental meeting when plaintiff had a brownie thrown at her. Thus, Carter failed to present any genuine issue of material fact supporting disparate treatment by NVG.

## B. Dismissal of Racial Harassment Claim

To survive a motion for summary judgment on a racial harassment claim relating to a hostile work environment, a plaintiff must demonstrate: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Mack v. Otis Elevator Co.,* 326 F.3d 116, 122 (2d Cir.2003) (internal quotation marks and brackets omitted).

The first element of a hostile work environment claim has both an objective and subjective component: "the misconduct must be severe or pervasive enough to create an objectively hostile or abusive

work environment, and the victim must also subjectively perceive that environment to be abusive." *Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir.2003) (internal quotation marks omitted). A hostile work environment claim may be based on one incident, but "we require that the incident constitute an 'intolerable alteration' of the plaintiff's working conditions, so as to substantially interfere with or impair his ability to do his job." *Mathirampuzha v. Potter,* 548 F.3d 70, 79 (2d Cir.2008) (citation omitted).

■ A review of the actual evidence on which plaintiff relies to support her allegations reveals a lack of objective proof of racially-related incidents beyond conclusory statements. Carter's testimony corroborates her daily notebook entry at the time of the alleged incidents in that it shows she either did not believe some incidents were racially related or that her belief that some incidents were racially related is based solely on speculation. For example, Carter testified that on October 13, 1999, she found a note written by coworkers, which included a racial epithet. However, the note itself was produced, reading only: "get out we do not want you here." There is nothing in the record to support Carter's speculation that the note was racially-motivated. Even if accepted as true by the Court, the conduct Carter claims to have been subjected to either directly or indirectly was too isolated, infrequent, and did not demonstrate unreasonable interference in her ability to work, nor is there any reason to believe such conduct was necessarily due to her race. Thus, Carter has failed to satisfy her burden of showing an objectively hostile work environment.

C. Dismissal of Sexual Harassment Claim

Plaintiff argues that the sexual harassment claims are sufficiently related to the race-related allegations in the charge so that it would be unfair to bar the sexual harassment claims because they were explicitly unexhausted in her EEOC Charge Discrimination filing on December 9, 1999. *See Butts v. City of New York Dep't of Hous. Pres. & Dev't,* 990 F.2d 1397, 1402 (2d Cir.1993), superceded by statute on other grounds, Civ. Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071. The "sufficiently related" theory applies in three situations: (1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) "where the claim alleges an employer's retaliation for filing an EEOC charge; and (3) where a plaintiff alleges further incidents of discrimination carried out in the same manner alleged in precisely the EEOC charge." *Id.* at 1402–03 (internal quotation marks and citation omitted).

■ None of the three theories are applicable. Carter's charge to the EEOC made no reference whatsoever to gender bias at NVG, and such claims are not reasonably related to her race-based charge. The EEOC was thus not "on notice" of Carter's gender-based complaints. Even if the Court reaches the merits of Carter's sexual harassment claims, moreover, the allegations were too infrequent, isolated, and unknown to NVG and, thus, do not amount to a showing that the workplace was permeated with discriminatory sexual intimidation that was sufficiently pervasive to alter the work environment and subsequently impute responsibility to NVG. *See Terry,* 336 F.3d at 148. Accordingly, plaintiff cannot raise a genuine issue of material fact to render dismissal of the sexual harassment claim improper.

## II. Claims Against the Union

A union has a duty to "serve the interests of all [its] members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "[B]reach [of this duty] occurs only when a union's conduct toward a member ... is arbitrary, discriminatory, or in bad faith," *United Steelworkers of Am., AFL–CIO–CLC v. Rawson,* 495 U.S. 362, 372, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) (internal quotation marks omitted), or "when [the union] causes an employer to discriminate against employees on arbitrary, hostile, or bad faith grounds." *Ramey v. Dist. 141, Int'l. Ass'n of Machinists & Aerospace Workers,* 378 F.3d 269, 277 (2d Cir.2004). "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Local Union No. 3 of Intn'l. Bhd. of Elec. Workers,* 34 F.3d 1148, 1153–54 (2d Cir.1994).

Evidence provided by Carter does not adequately support the assertion of racial discrimination by the union and, quite the contrary, lends credence to the affidavits of Carter's union stewards John J. Courcy and Gilbert A. Odjick, the latter of which particularly points out a lack of racial animus or sexual harassment directed against any employee. Thus, Carter has not provided any evidence that would suggest a breach of the union's duty of fair representation is a contested fact, and summary judgment against plaintiff with regard to a breach of the duty of fair representation was appropriate.

Accordingly, for the reasons set forth above, the judgment of the district court is AFFIRMED.