**Vadim SEALY, Plaintiff,**

v.

**The HERTZ CORPORATION, Defendant.**

**No. 08–cv–1634 (GBD).**

United States District Court, S.D. New York.

Aug. 21, 2009.

David George Gabor, Gabor & Gabor, Garden City, NY, for Plaintiff.

Timothy Riker Newton, Frank B. Shuster, Constangy, Brooks & Smith, L.L.C., Atlanta, GA, Kenneth Welch Digia, Epstein, Becker & Green, P.C., New York, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge.

Plaintiff Vadim Sealy brings this action against his former employer, he Hertz Corporation, alleging that he suffered racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2003 *et seq.*, the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. § 1981, New York Executive Law §§ 296 *et seq.*, and the New York City Human Rights Law, Administrative Code §§ 8–101 *et seq.* (2007) (the "HR Code"). Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants' motion is granted.

### MATERIAL FACTS

In June 1994, plaintiff, an African-American, began working as an assistant manager at defendant Hertz's 48th Street location in New York City. *See* Deposition of Vadim Sealy ("Sealy Depo.") at 141, 154–55; Rengler Decl. at ¶ 17. Hertz promoted plaintiff multiple times between 1994 and 2001. Affidavit of Vadim M. Sealy dated March 1, 2009 ("Sealy Aff.") at ¶¶ 1, 4; Sealy Depo. at 141–142, 145.

Throughout 1998 and in the years that followed, plaintiff received numerous written warnings and reprimands for violating Hertz's policies and failing to meet company standards. Plaintiff received a below average rating on his 1999 and 2006 performance evaluations. Sealy Aff. at ¶ 19; Sealy Depo. at 302–03. Although plaintiff was recognized for his achievements in customer service (*see, e.g.,* Sealy Aff., Exhibits A, C, D, O), plaintiff never attained an "above-average" rating on any of his performance evaluations during his thirteen years of employment at Hertz. Declaration of Paul Siracusa dated January 30, 2009 ("Siracusa Decl.") at ¶ 14. Plaintiff

argues that his evaluations did not fairly represent his performance. *See id.* at ¶¶ 20, 45, 70, 71. He does not, however, dispute the underlying facts set forth in his evaluations.

The record contains substantial evidence of plaintiff's unsatisfactory performance. *See, e.g.,* Declaration of Albert J. Rengler dated January 30, 2009 ("Rengler Decl."), Exhibit B at 1 (written reprimand dated January 29, 2002 for improper personal use of a company car which resulted in a customer complaint); *id.* at 3 (written warning dated February 4, 2003 for plaintiff's failure to obtain Certificate of Fitness requirements in a timely fashion); *id.* at 4 (supervisor complaint that plaintiff's performance of vehicle audits was "unacceptable"); *id.* at 6 (noting verbal warning plaintiff's supervisor issued on June 23, 2004 for noncompliance with security policy); *id.* at 8 (documenting plaintiff's failure to respond to problem with car lift in July 2004); *id.* at 9 (written reprimand for failing to complete slot reports as required); *id.* at 12 (plaintiff's tardiness led to problem with an employee receiving a written warning for tardiness that had to be investigated and rescinded). Furthermore, the evidence demonstrates that plaintiff received numerous verbal and written warnings from a number of different persons, including an African–American manager. *See* Rengler Decl., Exhibit B at 9.

Throughout his tenure at Hertz, plaintiff lodged a number of complaints regarding what he perceived to be unfair treatment. During the summer of 1996, plaintiff was issued a moving violation by police while driving off duty. Sealy Aff. at ¶ 14. After plaintiff received that ticket, Hertz tempo-rarily suspended plaintiff's on-the-job driving privileges. *Id.* Plaintiff complained to Hertz's management on August 28, 1996, expressing his belief that his temporary suspension was "excessive" and "inconsistent with Hertz's policy." *Id.* at ¶ 15. Plaintiff did not raise any concerns regarding any racially discriminatory motives for his temporary suspension.

On January 13, 1998, plaintiff's supervisors issued him a written warning "based on events from January 1995—November 1997." Sealy Aff. at ¶ 17. On February 2, 1998, plaintiff complained to his supervisor that the written warning "was motivated by unethical and unconstitutional reasons." *Id.* at ¶ 18. Plaintiff later complained that one of his managers intentionally failed to transmit positive information about him to his supervisors. *Id.* at ¶¶ 19, 25, 27. Plaintiff further contends that on August 12, 2002, "he was singled out and humiliated in a memorandum" which advised plaintiff's colleagues that plaintiff had suffered an on-the-job injury. *Id.* at ¶ 33. However, that memorandum made no reference to plaintiff's race, color, or national origin; it simply stated that plaintiff had suffered "a slip, trip and fall accident on 8/6/02 with recorded lost days" and that he would "be fine." *Id.,* Exhibit J.

Among other complaints, plaintiff contends that he was disciplined excessively "when an employee who reported to [him] failed to properly button one button on his shirt." *Id.* at ¶ 36.[1] Plaintiff also maintains that he "was the only manager expected to work six (6) consecutive days." *Id.* at 34. Plaintiff believes that he was punished too harshly for violating the company's "no rev" policy[2] even though his

---

1. Plaintiff's alleged punishment consisted of "having to drive in the smallest compact car." Sealy Aff. at ¶ 36.

2. Under defendant's "no rev", or revenue control policy, managers must ensure that all vehicles in the fleet are rented within a fixed number of days, particularly before taking a car out of circulation for personal use.

managers also violated that policy without suffering adverse consequences. *Id.* at ¶¶ 47, *id.* at Exhibits S, W. Plaintiff does not, however, dispute the fact that he violated the policy.

On May 10, 2002, plaintiff applied for the position of Senior Station Manager for Hertz's Long Island Region. *Id.*, Exhibit I. Plaintiff did not receive that promotion. The record does not identify any other specific promotions for which plaintiff applied.

The record indicates that other positions, including the job of City Manager, were not advertised within the company. Hertz did not accept direct applications for the job from internal candidates. Siracusa Decl. at ¶ 6. Rather, plaintiff's supervisors decided whom to promote to City Manager by reviewing each employee's performance evaluation. *Id.* at ¶ 8. Plaintiff did not express an interest in that, or any other specific managerial positions, to his supervisors. Siracusa Decl. at ¶ 13. Even if he had, plaintiff was not eligible for a promotion to that position because he never achieved an "above average" performance rating. *Id.* at ¶ 14.[3]

Plaintiff telephoned one of his supervisors on April 19, 2006 to complain for the first time that, in his opinion, his manager "was a racist and was targeting" plaintiff for reprimand because plaintiff is African–American. *Id.* at ¶ 50. At a May 18, 2006 meeting attended by that manager, plaintiff's supervisor, and his employee relations representative, plaintiff complained that their discussion of plaintiffs performance issues was tantamount to "a lynching". Sealy Aff., Exhibit AA at 12. Plaintiff also stated that he wanted representation from someone at the "NAACP". *Id.*, Exhibit AA at 19. Plaintiff has not identified any instance of unfair treatment in which defendants referred to his race or national origin. In fact, plaintiff testified that he never heard anyone at Hertz make statements which caused him to believe that he was being discriminated against because of his race. Sealy Depo. at 281–82.

On June 29, 2006, plaintiff's supervisor issued him a written warning for failing to comply with six aspects of company policy. Sealy Aff. at ¶ 61, *id.* at Exhibit EE.[4] Plaintiff does not deny the allegations set forth in that warning. Rather, he maintains that in each instance, his supervisor failed to account for mitigating factors which impacted plaintiff's conduct. Plaintiff further argues that other employees violated the same policies with impunity. *Id.* Plaintiff was placed on probation after receiving that warning. *Id.* On January 20, 2007, at a meeting to discuss his probation, plaintiff complained that he was being subjected to a "witch hunt," and that he was aware of his "civil rights and civil liberties." Sealy Aff., Exhibit RR at 1. Plaintiff did not, however, raise any concerns about perceived racial discrimination at that meeting.

In 2007, Hertz eliminated approximately 900 jobs as part of a corporate downsizing effort. Rengler Decl. at ¶ 19. At defendant's request, plaintiff's manager completed a performance evaluation of all of

3. The record indicates that defendant promoted one African–American to a branch manager position prior to plaintiff's employment. Deposition of Angelo Leon dated Nov. 7, 2008 ("Leon Depo.") at 32. It also shows that defendant promoted African–American and Hispanic employees to other managerial positions in 2004. Rengler Decl. at ¶¶ 7, 8.

4. Among the infractions were plaintiff's failures to secure confidential customer information and to promptly respond to official governmental mail. Plaintiff's Rule 56.1 Statement ("Sealy Stmt.") at ¶ 129. Plaintiff's manager also cited plaintiff for repeatedly violating the company's policy on personal use of rental vehicles. *Id.*

the managers under his supervision. Declaration of Christopher Duvally dated Feb. 2, 2009 ("Duvally Decl.") at ¶ 11; Siracusa Decl. at ¶ 28. Those evaluations were submitted to Hertz's human resources department and used to determine which managers would be terminated as part of the staff reduction effort. Duvally Decl. at ¶ 13; Siracusa Decl. at ¶ 31; Rengler Decl. at ¶ 16. The record shows that plaintiff was one of two managers with the lowest performance assessments, both of whom were dismissed. Duvally Decl. at ¶ 16; Siracusa Decl. at ¶ 32; Rengler Decl. at ¶ 17. Defendants notified plaintiff that his employment would terminate on March 6, 2007. Sealy Aff. at ¶ 83. After plaintiff's employment ended, Hertz transferred other employees, including an African–American woman, to assume plaintiff's job responsibilities. Siracusa Decl. at ¶ 34.

### SUMMARY JUDGMENT STANDARD

Under Rule 56(b) of the Federal Rules of Civil Procedure, defendant may move at any time, with or without supporting affidavits, for summary judgment on all or part of plaintiff's claims. Fed.R.Civ.P. 56(b). In assessing whether summary judgment is appropriate, this Court must resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *See Belfi v. Prendergast,* 191 F.3d 129, 135 (2d Cir.1999). "A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Westinghouse Credit Corp. v. D'Urso,* 278 F.3d 138, 145 (2d Cir.2002).

■ To decide whether plaintiffs' claims may withstand defendants' motion, this Court undertakes the three part analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973); *see also Gadsden v. Bernstein Litowitz Berger & Grossman,* 323 Fed.Appx. 59, 60–61 (2d Cir.2009). Under *McDonnell Douglas,* plaintiff may establish a *prima facie* claim of discrimination "by showing: (1) that he is a member of a protected class; (2) that he was qualified for the employment position in dispute; (3) that he experienced an adverse employment action; and (4) [ . . . ] circumstances giving rise to an inference of discrimination." *Id.* The burden on plaintiff at the initial stage of the analysis is *de minimis. Brennan v. Metropolitan Opera Association, Inc.,* 192 F.3d 310, 317 (2d Cir.1999). However, an employer may rebut plaintiff's *prima facie* showing by presenting "reasons that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *See Abdu–Brisson v. Delta Air Lines,* 239 F.3d 456, 469 (2d Cir.2001) (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). To overcome defendant's rebuttal, plaintiff must "come forward with evidence that the employer's proffered explanations were merely pretextual and that the actual motivations more likely than not were discriminatory." *Id.* Otherwise, his claims will be dismissed.

■ In evaluating whether the parties have met their respective burdens, this Court "examine[s] the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *See Byrnie v. Town of Cromwell, Board of Education,* 243 F.3d 93, 102 (2d Cir.2001). If the employer explains its bases for taking an adverse employment action in "in clear and specific terms" which are "reasonably attributable to an honest even though partially subjective evaluation of [plaintiff's] qualifications,"

this Court will not draw an inference of unlawful discrimination. *Id.* at 104.

## RACIAL DISCRIMINATION

■ Plaintiff's *prima facie* claims of racial discrimination under Title VII, 42 U.S.C. § 1981, and New York State law must be supported by admissible evidence showing that he is a member of a protected class, that he was qualified to hold his managerial position at Hertz, and that he experienced an adverse employment action under "circumstances giving rise;o an inference of discrimination." *See Brennan v. Metro. Opera Assn., Inc.*, 192 F.3d 310, 316 (2d Cir.1999).[5] The parties do not dispute that plaintiff qualifies as a member of a protected class under 42 U.S.C. § 2000e(a), nor has defendant challenged plaintiff's qualification for his position as senior station manager. Moreover, termination clearly qualifies as an "adverse employment action." *See Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir.2008). Thus, the determinative question with respect to plaintiff's alleged wrongful discharge claim is whether plaintiff has made a *prima facie* showing that the events surrounding his termination give rise to an inference of discrimination.

■ Among the circumstances which may support an inference of discrimination are: an employer's acceptance of applications "from persons of the plaintiff's qualifications" after plaintiff's discharge; "the employer's criticism of the plaintiff's performance in ethnically degrading terms"; "invidious comments about others in the employee's protected group"; and "the more favorable treatment of employees not in the protected group." *See Chambers v.*

*TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994); *see also Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir.1996) (an inference of discrimination may be supported by evidence of "actions or remarks made by decision-makers that could be viewed as reflecting discriminatory animus").

■ In this action, there is no evidence that Hertz accepted applications for plaintiff's position "from persons of the plaintiff's qualifications" after plaintiff's termination. The record is similarly devoid of evidence showing that plaintiff's supervisors criticized plaintiff's performance in ethnically degrading terms or that anyone at Hertz engaged in conduct reflecting racial animus. In fact, plaintiff testified that he never heard anyone at Hertz make statements which caused him to believe that he was being discriminated against because of his race. *See* Sealy Depo. at 281–82.

Plaintiff's principal argument in support of his racial discrimination claim is that his managers and supervisors disciplined him excessively for minor infractions, and that they failed to adequately account for his positive contributions to the company. Plaintiff also maintains that he was singled out for ridicule and that he was excluded from a celebratory function to which he should have been invited. To the extent that plaintiff relies on such examples as proof of a pattern of racial discrimination through racially disparate treatment, plaintiff must proffer admissible evidence that "a similarly situated employee not in the relevant protected group received better treatment." *See Carter v. New Venture Gear, Inc.*, 310 Fed.Appx. 454, 457 (2d

---

**5.** *See McPherson v. NYP Holdings, Inc.* 227 Fed.Appx. 51, 53 (2d Cir.2007) (applying same analysis to Title VII and, 42 U.S.C. § 1981, New York Executive Law claims); *see also In re Aurecchione v. N.Y. State Division of*

*Human Rights*, 98 N.Y.2d 21, 25, 744 N.Y.S.2d 349, 351, 771 N.E.2d 231 (N.Y. 2002) (applying Title VII standard to discussion of New York Executive law claim).

Cir.2009). This Court must then evaluate the non-protected employee's conduct and plaintiff's actions with reference to their respective employment positions to determine whether the two are, in fact, similarly situated. *See Hargett v. Nat'l. Westminster Bank, U.S.A.,* 78 F.3d 836, 839–40 (2d Cir.1996) (noting that employees "occupying different levels of authority" may not be similarly situated despite engaging in similar conduct). Furthermore, if the record shows that a non-protected employee engaged in conduct "materially different" than that of plaintiff, those employees will not be considered similarly situated for purposes of creating an inference of discrimination. *See Billue v. Praxair, Inc.,* No. 07 civ 2359, —— Fed.Appx. ——, ——, 2008 WL 4950991, at *1 (2d Cir. Nov. 20, 2008).

Plaintiff has not identified any non-African-American employees receiving disparate treatment with whom he was similarly situated. Rather, plaintiff complains that one of his managers, who is white, also violated company policies. *See, e.g.,* Sealy Aff. at ¶ 51. Plaintiff states that the manager in question "spent an hour laughing and joking" with another white employee before approaching plaintiff "in a belligerent and hostile manner." *Id.* at ¶ 50. Plaintiff also alleges that he and his supervisors all violated the "no rev" policy but that only he was sanctioned. *See, e.g.,* Sealy Stmt. at ¶ 83. Even if true, such evidence does not demonstrate the existence of a class of non-protected employees who received racially preferential treatment. Plaintiff and his manager occupy different levels within the company and are not alleged to have committed the same rule infractions. Thus, there is no basis i the record from which to conclude that they are "similarly situated" for purposes of the *McDonnell Douglas* analysis. Consequently, plaintiff has not shown that similarly situated employees were accorded preferential treatment.

### FAILURE TO PROMOTE UNDER TITLE VII

■ To assert a failure to promote claim under Title VII, a plaintiff must demonstrate that he is a member of a protected class, that on a specific occasion he "applied and was qualified for a job for which the employer was seeking applicants," only to be "rejected for the position" even though "the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *See Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir.1998). If a plaintiff fails to demonstrate "that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion," the failure to promote claim will be dismissed. *See Gupta v. New York City School Const. Authority,* 305 Fed.Appx. 687, 689–90 (2d Cir.2008) (citing *Brown,* 163 F.3d at 710).

■ The only specific position for which plaintiff applied was a position of senior station manager at defendant's Long Island facility in 2002. *See* Sealy Depo. at 160–162. However, plaintiff failed to receive the required above average performance rating to qualify for an internal promotion. *See* Sealy Depo. at 166, 180; Rengler Decl. at ¶¶ 5, 14. Defendant also argues that this position would have constituted a lateral move rather than an actual promotion. In any event, defendant correctly states that any claim plaintiff could assert based on his 2002 request would be untimely as beyond the statute of limitations. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir. 1998).

Although plaintiff maintains that a "glass ceiling" existed at Hertz, the record does not show that he applied for any

other managerial positions for which he was qualified. Furthermore, defendant promoted at least one African–American to the position of Branch Manager prior to plaintiff's hiring. *See* Leon Depo. at 32. Another African–American was promoted to a managerial position on April 5, 2004. *See* Rengler Decl. at ¶ 8. Therefore, plaintiff has not satisfied the threshold requirement to state a racial discrimination claim for Hertz's failure to promote him.

## RETALIATION

■ It is unlawful for an employer to take adverse employment actions against an employee because that employee either opposed the employer's unlawful employment practices or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" regarding unlawful employment practices. *See* 42 U.S.C. § 2000e–3(a). "To establish that an employer has unlawfully retaliated for an employee's having pursued a discrimination action, the employee must show that he was engaged in a protected activity; that the employer was aware of that activity; that there occurred an employment action adverse to the employee; and that there existed a causal connection between the protected activity and the adverse employment action." *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir.1990).

■ In order to survive defendants' motion, plaintiff must first establish that he engaged in protected activity. When an employee communicates to his or her employer a belief that the employer has engaged in unlawful discrimination, that conduct "virtually always" constitutes conduct for which the employee is entitled to protection under Title VII. *See Crawford v. Metro. Gov. of Nashville and Davidson Cty., TN.*, — U.S. ——, 129 S.Ct. 846, 851, 172 L.Ed.2d 650 (2009). Plaintiff states that on April 19, 2006, he com-

plained that his supervisor was a racist. Sealy Aff. at ¶ 50. Assuming that plaintiff's complaint qualifies as protected activity, plaintiff still must adduce sufficient evidence of a causal connection between this communication and his termination in order to create an inference of discrimination. Where there is no direct evidence of causation, plaintiff may establish a causal connection by showing that his protected actions were "closely followed in time by the adverse employment action." *See Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir.2001).

■ In this action, nearly one year elapsed between plaintiff's protected activity and his termination. There is no bright line rule regarding the temporal proximity required to establish a causal connection between protected activity and termination. *See generally id.* at 554–55. However, the uncontroverted facts presented here regarding plaintiff's documented performance problems during that extended period do not support a finding of a retaliatory motive for plaintiff's termination.

■ Even if this Court found that plaintiff had established a causal connection between his complaint and termination, he must still introduce evidence to show that defendant's proffered non-retaliatory motive for firing him was purely pretextual. *See Shah v. N.Y. State Dep't. of Civ. Svc.*, No. 01 cv 9009, 341 Fed.Appx. 670, 2009 WL 1868567, at *1 (2d Cir. Jun. 30, 2009). As stated above, plaintiff presents no evidence disputing defendant's proof that the larger corporate downsizing effort and plaintiff's poor performance reviews were the actual causes of his termination. Therefore, plaintiff has failed to satisfy his burden to raise a material issue of fact as to whether Hertz's decision to

end his employment was premised on a retaliatory motive

## HOSTILE WORK ENVIRONMENT UNDER TITLE VII

■■■■ To assert a viable claim that he endured a hostile work environment, "plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir.2006) (internal quotations omitted). This Court will consider "(1) the frequency of the [complained of] conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance" to determine whether a work environment is sufficiently abusive to be actionable under Title VII. *See Brennan*, 192 F.3d at 319. "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000).

■■■■ Plaintiff has not alleged that while he was employed at Hertz, any of his supervisors made discriminatory or racist remarks. Plaintiff's speculation about his supervisors' motives cannot substitute for evidence of conduct manifesting racial animus on the part of Hertz's employees. *See Butler v. Raytel Medical Corp.*, 150 Fed.Appx. 44, 47 (2d Cir.2005). Thus, plaintiff has failed to demonstrate that he endured any racial harassment to support a claim for hostile work environment. *See Martinez v. City of N.Y.*, 338 Fed.Appx. 71, 72, 2009 WL 2171398, at *1 (2d Cir. July 22, 2009) (instances of unfair treatment held insufficient to state hostile work environment claim without evidence of discriminatory motive).

## NEW YORK CITY HUMAN RIGHTS LAW

■■■■ In addition to his federal claims and his claim under New York Executive Law § 296, plaintiff alleges discriminatory violations of the HR Code. The HR Code's "uniquely broad and remedial purposes . . . go beyond those of counterpoint State or federal civil rights laws." *See Williams v. N.Y.C. Housing Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 31 (2009). Accordingly, in determining whether plaintiff's claims survive summary judgment, this Court must conduct an independent analysis under the HR Code.

■■■■ Section 8–107 of the HR Code protects employee from discrimination based on their "actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status." HR Code § 8–107. No "type of challenged conduct [may] be categorically rejected as nonactionable" under the HR Code. *See Williams*, 872 N.Y.S.2d at 33. Nevertheless, a plaintiff asserting claims under the HR Code must demonstrate "by a preponderance of the evidence that she has been treated less well than other employees" due to unlawful discrimination. *Id.* at 39.

■■■■ As set forth above, plaintiff adduced no evidence of actions or remarks made by decision-makers reflecting discriminatory animus to support his claims under the HR Code. Additionally, plaintiff has not identified any similarly situated, non-African-American employees who received preferential treatment. Plaintiff's general statements about his supervisors receiving more lenient treatment for violations of the "no rev" policy and other workplace rules is conclusory in nature and cannot give rise to an inference of

discrimination, even under the more expansive protections of the HR Code.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. Plaintiffs' claims are dismissed.

SO ORDERED: