**Roger HARTLEY, Plaintiff,**

v.

**Henry RUBIO, City of New York, New York City Department of Education, and Does 1–10, inclusive, Defendants.**

**No. 08 CV 4461 (NRB).**

United States District Court, S.D. New York.

March 29, 2011.

Joy Hochstadt, Joy Hochstadt P.C., New York, NY, for Plaintiff.

Isaac Klepfish, Corporation Counsel of the City of New York Law Department, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiff Roger Hartley ("Hartley"), formerly a teacher in the New York City public school system, brings this action pursuant to 42 U.S.C. §§ 2000e to 2000e–17 ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law §§ 290–297 ("NYSHRL"), the New York City Human Rights Law, N.Y. City Admin. Code §§ 8–101 to 131 ("NYCHRL"), and New York State law.

In his complaint, Hartley alleges, *inter alia,* that Principal Henry Rubio, the City of New York, and the New York City Department of Education (collectively, "defendants") discriminated against him on the basis of his race and national origin.

Before this Court is defendants' motion for summary judgment, in which defendants argue that they had legitimate, non-discriminatory reasons for terminating Hartley and that those reasons were not pretext for impermissible discrimination. Also before us is plaintiff's cross motion, which requests that the Court: (i) grant Hartley's cross motion for summary judgment; and (ii) grant Hartley's motion to amend the second amended complaint.

For the reasons set forth below, we grant defendants' motion for summary judgment, deny Hartley's cross motion for summary judgment, and deny Hartley's motion to amend the second amended complaint.

## BACKGROUND

### I. Factual Background

■ Hartley, a black male who was born in the United States of America, was first employed by the New York City Department of Education ("DOE") in 1979.[1]

---

1. The background is derived from Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, filed July 12, 2010 ("R. 56.1"), the exhibits annexed thereto ("D. Ex."), Plaintiff's Response to Defense 56.1 Statement, filed October 13, 2010 ("Counter R. 56.1"), and the exhibits annexed thereto ("P. Ex."). Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Local Rule 56.1(b). Additionally, "each statement controverting any statement of material fact[] must be followed by citation to evidence which would be admissible[] as required by Federal Rule of Civil Procedure 56(e)." Local Rule 56.1(d). Where a party opposing a motion for summary judgment fails to specifically controvert a statement of material fact, the statement is "deemed to be admitted for the purposes of the motion." Local Rule 56.1(c); *see also Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 312 (2d Cir.2008). Thus, in arriving at these undisputed facts, we reject as insufficient: (1) conclusory or non-responsive objections; (2) objections that omit citations to admissible evidence; and (3) responses that simply advocate for a different spin on otherwise uncontroverted facts. Moreover, we disregard responses that contradict Hartley's

(R. 56.1 ¶¶ 2–3.) In 1994, Hartley began teaching at A. Philip Randolph Campus High School ("APRHS") in Manhattan. (R. 56.1 ¶ 4.)

Rubio is presently the Principal of APRHS and has been employed in this position since November 2006. (R. 56.1 ¶ 5.) Other members of the APRHS administration include Rosalie David, the Assistant Principal for Mathematics and Science and Shep Brown, Assistant Principal for Organization. (R. 56.1 ¶ 6.) The instant case involves Hartley's conduct at APRHS during the 2006–2007 academic year.

On October 27, 2006, Shreedevi Vora, a teacher at APRHS, submitted a written memorandum to the school's then-principal in which she complained about Hartley's conduct.[2] (R. 56.1 ¶¶ 11–12.) In the memorandum, Vora noted she and a few students were decorating a bulletin board in a hallway when Hartley passed by, "made a snide remark to one of the students," and asked why the student had time for this task and not for physics. According to Vora's memorandum, Hartley "went on to berate me," and after Vora defended her actions, Hartley stated to Vora that "[i]f you don't stop talking to me like that I will smack the hell out of you." (R. 56.1 ¶ 12; D. Ex. G.)

On February 16, 2007, Assistant Principal Rosalie David wrote a memorandum in which she complained about Hartley's conduct. (R. 56.1 ¶¶ 6, 13–14.) According to the memorandum, Assistant Principal David had met with a parent who requested that APRHS reinstate his son into Hartley's Advanced Placement physics class and permit his son to drop a calculus class, a course of action that Hartley had recommended. Assistant Principal David expressed concern about permitting the student to drop the math course, and advised the parent that she would discuss this proposal with the principal before authorizing it. (R. 56.1 ¶ 14; D. Ex. H.)

Shortly thereafter, Hartley followed Assistant Principal David into Assistant Principal Brown's office. According to the memorandum:

> [Hartley] followed me into Mr. Brown's office stating '[w]hat kind of [Assistant Principal] are you, you cannot make a decision.' ... He informed me several times that I did not know what I was doing and I am not doing my job. Every time I attempted to explain the school policy he would interrupt me and start screaming that 'You do not know what you are doing, can't you make a decision?' At one point Mr. Brown had to step between Mr. Hartley and myself.

(R. 56.1 ¶ 14; D. Ex. H.) Assistant Principal Brown corroborated Assistant Principal David's account in a written memorandum dated March 30, 2007. (R. 56.1 ¶¶ 15–16.)

On March 22, 2007, APRHS hosted parent-teacher conferences and Hartley conducted the conferences in his classroom.

---

prior deposition testimony because a party's affidavit that contradicts his or her own prior testimony cannot raise a genuine issue of fact on a motion for summary judgment. *See Clayborne v. OCE Business Servs.*, 381 Fed. Appx. 32, 35 (2d Cir.2010) ("Conclusory allegations cannot create a genuine issue of fact, nor may a party create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous de-

position testimony.") (internal citations and quotations omitted); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir.1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").

**2.** According to Hartley, Vora is of African descent. (Counter R. 56.1 ¶ 106.)

Parents awaiting their opportunity to speak with Hartley remained in the hallway. (R. 56.1 ¶¶ 17–18.) When Principal Rubio passed through the hallway, a number of parents complained to him that they were waiting a long time to meet with Hartley. (R. 56.1 ¶¶ 19–20.)

To address the situation, Principal Rubio attempted to look through the glass panel on Hartley's classroom door to determine if there was a problem. However, the glass panel on the classroom door had been covered with paper and Rubio could not view the interior of the classroom. Rubio then attempted to enter the classroom but could not do so because the door was locked.[3] (R. 56.1 ¶¶ 20, 22.) Rubio then unlocked the door, entered the classroom, and advised Hartley to try to limit each conference to five minutes or fewer.[4] (R. 56.1 ¶¶ 24–25.)

Thereafter, Principal Rubio removed the paper from the window on the classroom door. Hartley, in turn, placed the paper back on the door. (R. 56.1 ¶¶ 26–27, 52.) When Principal Rubio advised Hartley that such obstructions presented safety concerns, Hartley again rebuffed Rubio and stated: "[t]his is my classroom. You don't tell me what to do. I have been here longer than you. . . ." (R. 56.1 ¶¶ 28–29, 52.) Principal Rubio directed Hartley to continue this discussion in Rubio's office, but Hartley refused to leave his classroom. (R. 56.1 ¶¶ 30–31.)

A few minutes later, Principal Rubio returned to Hartley's classroom and was accompanied by Assistant Principal Brown and a school safety agent named Richard Jackson.[5] (R. 56.1 ¶¶ 32, 52.) Rubio again requested that Hartley accompany him to his office but Hartley suggested that they go to the back of the classroom instead. (R. 56.1 ¶¶ 33, 49–50.) When Principal Rubio arrived at the back of the classroom, Hartley told Rubio: "this is my classroom. Leave me alone or I will have you arrested." Hartley continued to make comments and gestures that Rubio perceived as threatening and Brown and Jackson had to physically restrain Hartley from approaching Principal Rubio.[6] (R. 56.1 ¶¶ 34–35, 38, 49–50.) As Hartley was being restrained, he repeatedly shouted: "PUNK, you know what, I am going to make sure you and [Superintendant] Francesca Pena get it . . . Watch I was here when you were in diapers." (R. 56.1 ¶¶ 39, 50.)

Later that evening, Principal Rubio advised Regional Superintendent Gayle Reeves and Local Superintendent Francesca Pena via e-mail about the evening's events and solicited their guidance about how to respond. (R. 56.1 ¶¶ 7–8, 41.) After receiving advice from his superiors, Rubio invited Hartley to attend a meeting the following day. (R. 56.1 ¶ 41.)

At the meeting, which was attended by Principal Rubio, Assistant Principal Brown, Hartley, and Hartley's union rep-

---

**3.** According to defendants, for safety reasons it is generally not appropriate to obstruct the window on a classroom door or to lock a classroom door. (R. 56–1 ¶¶ 21, 23.)

**4.** Rubio testified that he unlocked the door using his key (D. Ex. U), whereas Hartley contends that Principal Rubio entered the classroom as Hartley opened the door to escort a parent out of his classroom. (Counter R. ¶ 24.)

**5.** Like Hartley, Assistant Principal Brown and safety agent Jackson are African–American. (R. 56.1 ¶ 51.)

**6.** According to contemporaneous documents, Hartley took something off his belt, took off his tie, and began to unbutton his shirt. Rubio and safety agent Jackson viewed these as threatening gestures, which led to Jackson and Brown's decision to restrain Hartley. (R. 56.1 ¶¶ 36, 50.)

resentative, Rubio gave Hartley the opportunity to explain his conduct. In response, Hartley's union representative advised Rubio that Hartley would not make any comments about the previous day's events. (R. 56.1 ¶¶ 42–43, 49.) Following the meeting, Principal Rubio advised Superintendant Pena about Hartley's refusal to discuss the incident. (R. 56.1 ¶ 44.)

Thereafter, Superintendants Pena and Reeves directed that Hartley be reassigned from APRHS to the Manhattan Regional Operation Center ("Reassignment Center"). The DOE's Deputy Director of Human Resources sent Hartley a letter, dated March 23, 2007, alerting Hartley to the reassignment. (R. 56.1 ¶¶ 46–47; D. Ex. X.)

On March 26, 2007, Hartley wrote a letter summarizing his version of the events that transpired on March 22 and 23, 2007. (R. 56.1 ¶¶ 54–55.) In the letter, Hartley complained that he was pushed by Principal Rubio at the time Hartley went to replace the paper over the glass portion of the classroom door. Hartley asserted that his reassignment was improper and that Rubio should be immediately removed from APRHS. (R. 56.1 ¶ 55; D. Ex. J.)

Over the next two months, Assistant Principal David sent Hartley three letters requesting that he provide her with "all materials and records necessary to determine student grades." (R. 56.1 ¶¶ 56–58.) Hartley, however, failed to comply with Assistant Principal David's requests. (R. 56.1 ¶¶ 59–60.)

Although Hartley was reassigned to the Reassignment Center in late March 2007, Hartley failed to report to the center until November 21, 2007.[7] (R. 56.1 ¶ 61.) Upon Hartley's return, Principal Rubio sent Hartley a letter and requested that Hartley meet with him for a disciplinary conference. A conference was then held on December 6, 2007 and Hartley's union representative again advised Principal Rubio that Hartley would not answer any questions. (R. 56.1 ¶¶ 63–65.)

---

**7.** Defendants contend that Hartley's eight-month absence from the Reassignment Center was unauthorized. By contrast, Hartley contends that he sustained an injury to his shoulder during the March 22, 2007 dispute with Principal Rubio, that he properly applied for medical leave, and that defendants delayed reviewing his application for medical leave. (R. 56.1 ¶ 61, Counter R. 56.1 ¶ 59.) It is undisputed that on April 27, 2007, Hartley applied for paid medical leave for the period beginning on March 26, 2007 and ending on May 1, 2007. (R. 56.1 ¶ 74.) Principal Rubio denied that application in a letter dated May 27, 2007, stating that Hartley had failed to follow the appropriate procedures and had failed to file the requisite forms. (R. 56.1 ¶ 75.) On June 27, 2007, Hartley submitted another application for paid medical leave, this time for the period beginning on May 2, 2007 and ending on June 27, 2007. (R. 56.1 ¶ 78.) Principal Rubio approved this application "subject to medical evaluation." (R. 56.1 ¶ 79.) On November 14, 2007, a physician at the DOE's Medical Bureau conducted a medical examination of Hartley. The physician concluded that there were "no objective findings to preclude [Hartley's] return to work" and on November 20, 2007, the DOE's Medical Bureau advised Hartley that he was fit to return to work. (R. 56.1 ¶¶ 84–85.)

Hartley returned to the Reassignment Center on November 21, 2007. (R. 56.1 ¶ 36.) Hartley remained at the Reassignment Center from November 21, 2007 through January 3, 2008, when Hartley accepted a teaching position at a public school in Westchester County. Hartley did not return to the Reassignment Center until October 16, 2008. (R. 56.1 ¶¶ 93–94.) In November 2007, the DOE concluded that Hartley had been on unauthorized leave from March 26, 2007 through his return in November, and that he had been wrongfully paid nearly $50,000 for that period of time. As a result, the DOE began withholding pay for then-current pay periods to begin to recoup the wrongfully-disbursed salary. (R. 56.-¶¶ 87–92.)

On April 23, 2008, Hartley was served with disciplinary charges and specifications. These documents detailed, *inter alia*, Hartley's February 16, 2007 dispute with Assistant Principal David, Hartley's March 22, 2007 dispute with Principal Rubio, and Hartley's failure to provide student grades to the administration in April 2007 as requested. (R. 56.1 ¶¶ 66–67; D. Exs. GG, HH.) According to documents, this conduct constituted: just cause for discipline under New York Education Law section 3020–a; neglect of duty; insubordination; conduct unbecoming Hartley's position or conduct prejudicial to the good order, efficiency, or discipline of the service; substantial cause rendering Hartley unfit to perform his obligations properly to the service; and just cause for termination. (R. 56.1 ¶ 68.) The documents advised Hartley that "within ten days of receipt of these charges, you must elect to request a hearing before an impartial hearing officer, or you will waive your right to a hearing." (R. 56.1 ¶ 69.)

Hartley failed to request a hearing. (R. 56.1 ¶ 70.) Accordingly, on December 9, 2008, the General Counsel to DOE Chancellor Joel Klein alerted Hartley that his right to a hearing was deemed waived and that "the charges preferred against you are now subject to disposition at the next regularly scheduled meeting of the Education Panel to be held on December 15, 2008." (R. 56.1 ¶ 70.) On the same date, the General Counsel to the Chancellor prepared a written memorandum for the members of the DOE Panel for Education Policy. The memorandum stated that "[h]ad the matter proceeded to trial, the Office of Legal Services would have sought the immediate termination of [Hartley's] employment. The testimony and evidence against [Hartley] would have supported a finding of unfitness on [Hartley's] part precluding [Hartley's] return to a position as a teacher." The memorandum then summarized the events described above. (R. 56.1 ¶ 71.)

On December 30, 2008, Chancellor Klein sent a letter to Hartley. In the letter, Chancellor Klein advised Hartley that, based on the Panel for Educational Policy's findings of fact, his services with the DOE were terminated.[8] (R. 56.1 ¶ 72.)

## II. Procedural History

On March 23, 2007, Hartley filed a complaint with the DOE's Office of the Special Commissioner of Investigations ("OSI"), in which he alleged that Principal Rubio engaged in misconduct and that Rubio had

---

8. According to Chancellor Klein's letter, the Panel for Educational Policy made the following findings of fact: "(1) You, in the presence of a parent, questioned whether Assistant Principal Rosalie David was capable of making a business decision and stated that the Assistant Principal did not know what she was doing and claimed that the Assistant Principal was not doing her job. You further questioned Assistant Principal David, in the presence of the parent, stating 'what kind of Assistant Principal are you?' (2) You refused to attend a meeting within the school building as directed by Principal Rubio. You stated that you were not going downstairs, that you were at the school when the Principal was in diapers, that you were going to kick the Principal's 'butt,' that the Principal was a 'punk,' that the classroom belonged to you and that you did not care if the Principal was the Principal, you were not scared of him. (3) You removed your tie, took something off your belt, started unbuttoning your shirt and charged toward Principal Rubio. You continued toward the Principal until you had to be restrained and escorted out of the classroom by School Safety Supervisor Richard Jackson and Assistant Principal Brown. (4) You failed to comply with the Principal's directive to complete and forward student grades, as well as attendance records, and to provide access to student labs. Your noncompliance put students in jeopardy of not graduating and/or receiving advanced Regent's Diplomas." (R. 56.1 ¶ 72.)

pushed Hartley during the March 22, 2007 dispute. (R. 56.1 ¶ 101.) After an investigation, OSI found the allegations unsubstantiated.[9] (R. 56.1 ¶¶ 103–04.)

On June 13, 2007, Hartley filed a notice of claim with the Comptroller's Officer of the City of New York, seeking $3 million in damages. in that notice of claim, Hartley asserts that Principal Rubio assaulted him on March 22, 2007 and seeks. (R. 56.1 ¶ 105; D. Ex. T.) Hartley alleges in the second amended complaint ("SAC") that "at least thirty days have elapsed since the service of the Notice of Claim and the adjustment or the payment of the claim has been neglected or refused." (SAC ¶ 15.)

On November 26, 2007, Hartley filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). On April 3, 200 9, the EEOC sent Hartley a letter advising him that: "[a]fter analyzing the information submitted to us, we [cannot] conclude that further investigation will result in a finding that [the DOE] violated one of the federal laws enforced by the EEOC because your claim is untimely ..." The letter further apprised Hartley of his right to bring a lawsuit in federal court. (R. 56.1 ¶ 106; P. Ex. 89.)

Hartley commenced the instant action on May 13, 2008. In the subsequent two years, Hartley filed two amended complaints. The second amended complaint includes fourteen causes of action, including: causes of action under Title VII and 42 U.S.C. § 1981 for discrimination on the basis of race and national origin and retaliation on the basis of race; a cause of action under the NYSHRL for discrimination on the basis of race; causes of action under the NYCHRL for retaliation and discrimination on the basis of race and national origin; and causes of action for assault, battery, intentional and negligent infliction of emotional distress, and negligent supervision or retention of an unfit employee. Following discovery, defendants filed their motion for summary judgment.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see also Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

---

**9.** Hartley lodged two previous complaints that are unrelated to the above-mentioned events. First, on November 29, 2004, Hartley complained of "a long history of chronic discrimination against staff members of African American descent at APRHS" and alleged that Assistant Principal David and Assistant Principal Barbara Poseluzny were responsible for the alleged misconduct. On January 4, 2005, following an investigation, the DOE Of- fice of Equal Opportunity advised Hartley that he had not provided credible evidence to substantiate his allegations. (R. 56.1 ¶¶ 96–97). Second, in March 2007, Hartley called 311 and reported that the restrooms at APRHS were unsanitary. Plaintiff did not directly make this complaint to Principal Rubio or other APRHS administrators. (R. 56.1 ¶¶ 98– 100.)

the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no issues of material fact exist for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 330–31, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing and to establish that there are material issues of fact requiring trial. *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). In determining whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. *See Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 720 (2d Cir.2010).

"Because direct evidence of an employer's discriminatory intent will rarely be found," motions for summary judgment in employment discrimination actions should be evaluated with caution. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *See id.* (citing *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985)). Indeed, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001).

## II. Federal Claims

### A. Discrimination Claims

 It is well-settled that Title VII claims and claims for race and national origin discrimination under § 1981 are an-

alyzed under the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Ruiz v. County of Rockland,* 609 F.3d 486, 491–92 (2d Cir.2010); *Holcomb v. Iona College,* 521 F.3d 130, 138 (2d Cir. 2008).

In the first step of this framework, the employee bears the burden of producing evidence sufficient to support a prima facie case of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position he held; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See Ruiz,* 609 F.3d at 491–92.

Second, once the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). At this step, however, a defendant "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Rather, a defendant "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]." *Id.* at 255, 101 S.Ct. 1089.

Third, if the defendant articulates a nondiscriminatory explanation for the action, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but

were a pretext for discrimination.' " *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir.2004) (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). To create a material issue of fact and defeat a motion for summary judgment, however, a plaintiff is required to produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate nondiscriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000) (internal quotations omitted, alterations in original). In determining whether the articulated reason for the action is a pretext, "a factfinder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable. Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170–71 (2d Cir.1993).

Defendants contend that Hartley cannot establish a prima facie case of employment discrimination. Defendants further argue that, even assuming Hartley established a prima facie case, defendants had legitimate, nondiscriminatory reasons for terminating Hartley and that there is no evidence of pretext.

In response, Hartley raises a number of arguments in support of the position that he has established both a prima facie case of discrimination and that he has produced sufficient evidence of pretext. On the whole, these arguments are of questionable legal relevance and are supported by limited or no evidence. For example, in his opposition papers, Hartley contends:

> [The events of March 22, 2007] all occurred because of the racial animus that was building since Rubio arrived and that exploded that night because Rubio wanted to show his might vs. the Black Teacher in front of the parents and Hartley had been put down, "dis"ed by Rubio from the day he arrived. Racial animus in a setting where everyone has at least one graduate degree does not take the form of racial slurs or overt attack on the race as a whole. It takes the form that the African–American is subtly belittled by being treated as if s/he is too self-assured, too cocky, too expectant of entitlements, and not as worthy as they think they are, insufficiently respectful of other.... The Latino on the other hand may feel that the African–American does not respect, or does not sufficiently show respect to him or her because of the Latino ethnicity. With the Latino as in this case in the position of authority, the tendency may be to over exert authority, so that there is at le[a]st a show of respect.

(Plaintiff's Memorandum of Law in Opposition to Defendant's [sic] Motion for Summary Judgment ("P. Mem.") at 9.) Hartley further argues:

> Defense asserts that Plaintiff cannot make a prima facie case of discriminatory or retaliat[ory] discharge because in his initial complaints to the Police, to OSI, *inter alia* he did not allege discrimination or retaliation, only assault. That is because the Defense has not been a black man growing up in the milieu that Plaintiff has lived and worked in for the fifty-five years of his life.

(P. Mem. at 17.) Hartley later argues:

> How many African–American men are profiled and rousted in New York City each year for no good reason at all? They are thrown in the foul smelling dank and dark "tombs" and if they are lucky they are released some days later and eventually the false charges are dis-

missed. Others not so lucky are charged with serious crimes and often convicted on flimsy or fabricated evidence; they may languish in prison for years if not decades. Yet they are the unnamed, souls lost in the "system." No one, however, has forgotten the brutal assault on Abner Louima 13 years ago. He didn't scream "they are discriminating against me"—his rage was at the assault, the pain, the jeopardy in which his life was put.

(P. Mem. at 18.) Hartley's papers are replete with similar arguments that have no support in the record or in the case law. However, we endeavor to distill this rhetoric to its essentials and to address Hartley's arguments in as clear and concise a manner as possible.

### 1. Prima Facie Case

Defendants do not directly dispute that Hartley, an African–American male, is a member of a protected class.[10] Nor do defendants directly dispute, apart from articulating the reasons for his termination, that Hartley was qualified for his reaching position or that he suffered an adverse employment action. However, defendants argue that Hartley has failed to establish that the adverse employment actions occurred under circumstances that give rise to an inference of discrimination. In support of their argument, defendants rely on the absence of evidence of discrimination and Hartley's own admission that Rubio never made any remarks that would indicate bias against or animist toward African–Americans.

While Hartley vigorously disputes the merits of the disciplinary actions taken against him, we too question whether Hartley has presented any admissible evidence that his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of race or national origin. *See Phillips v. Chertoff*, No. 03 Civ. 4266(GEL), 2005 WL 3466033, at *5 (S.D.N.Y. Dec. 16, 2005) ("To make a prima facie showing, the plaintiff must offer at least some minimal evidence to show that the circumstances permit an inference of discrimination."). Nevertheless, we recognize that the requirements of a prima facie case are "minimal," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and therefore we assume for the sake of argument that Hartley has established a prima facie case of discrimination.

### 2. Legitimate, Nondiscriminatory Rationale

Next, defendants contend that they have articulated legitimate, nondiscriminatory reasons for any adverse employment action.

■ It is well-settled that an employer may permissibly terminate an employee based on inappropriate comments, per-

---

**10.** To be sure, defendants argue that "[Hartley's] claim of national origin discrimination is frivolous because [Hartley] was born in the United States of America." (City Defendants' Memorandum of Law in Support of their Motion for Summary Judgment ("D. Mem.") at 4 n. 2.) Although it is not implausible that an individual born in the United States can be subjected to discrimination on the basis of his or her national origin, *see Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973) (under Title VII, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."), defendants' argument contains some merit. Specifically, Hartley's opposition papers contain few, if any, references to his national origin claims and can be read to suggest that he has abandoned these claims. Nevertheless, we assume for the purpose of this motion that Hartley has adequately established that he is a member of a protected class based on either his race, his national origin, or both.

ceived insubordination, or disruptive behavior in the workplace. *See, e.g., Nieves v. Angelo, Gordon & Co.,* 341 Fed.Appx. 676, 679 (2d Cir.2009) (insubordination and failure to complete assigned tasks furnished legitimate reasons for termination); *Gill v. Mt. Sinai Hosp.,* 160 Fed.Appx. 43, 44 (2d Cir.2005) (failure to complete job duties, inability to take directions, and confrontational and unprofessional behavior furnished legitimate business reasons for termination); *Beshty v. Gen. Motors,* 144 Fed.Appx. 196, 196 (2d Cir.2005) (confrontational management style furnished a legitimate business reason for termination); *Schnabel v. Abramson,* 232 F.3d 83, 87–88 (2d Cir.2000) (hostility toward legal organization's clients, difficulty following instruction, outright insubordination, and inept performance furnished legitimate business reasons for termination); *Matima v. Celli,* 228 F.3d 68, 79 (2d Cir.2000) (unseemly confrontations with supervisors and outright insubordination furnished legitimate business reasons for termination).

■ Additionally, an employer may take action against an employee who has been absent from his or her job for an extended period of time. *See, e.g., Carter v. New Venture Gear, Inc.,* 310 Fed.Appx. 454, 457 (2d Cir.2009) ("[Defendant] has met its burden of articulating a legitimate, nondiscriminatory reason for its actions, namely, [plaintiff's] perceived lack of productivity and extended absences . . ."); *Suarez v. Am. Stevedoring, Inc.,* 06 Civ. 6721(KAM) (RER), 2009 WL 3762686, at *14 (E.D.N.Y. Nov. 10, 2009) ("Defendant has made clear, through admissible evidence, that it . . . effectively terminated plaintiff's employment because of his well-documented history of absenteeism . . ."); *Matthias v. Ready Workers Mgmt. Corp.,* No. 08 Civ. 7245(PAC)(GWG), 2009 WL 2985696, at *6 (S.D.N.Y. Sept. 18, 2009) ("[Defendant] asserts that it terminated [plaintiff] because of ongoing behavioral problems, including failure to perform his job, absences, [and] confrontations with [his superior] . . . These plainly constitute legitimate neutral reasons for [defendant's] action."); *Galimore v. City Univ.,* 641 F.Supp.2d 269, 284–85 (S.D.N.Y.2009) ("All together, Plaintiff was absent twenty-three days and late to work several times without prior supervisory approval. . . . This evidence is sufficient to establish a legitimate, nondiscriminatory reason for Plaintiff's termination.") (internal citations omitted).

■ Here, defendants assert that Hartley acted in an insubordinate fashion during the 2006–2007 academic year. Specifically, defendants contend that Hartley was unprofessional and disruptive when: (1) he questioned Assistant Principal David's authority in front of a parent; (2) he engaged in a heated dispute with Principal Rubio during parent-teacher conferences; and (3) he failed to provide student grades to the administration. The multiple, independent, and documented accounts of the above-mentioned conduct adequately support defendants' stated rationale for reassigning and ultimately terminating Hartley. Thus, we conclude that defendants have met their burden of articulating a legitimate, nondiscriminatory reason for reassigning and terminating Hartley.

Defendants also assert that Hartley failed to report for work at the Reassignment Center from late March 2007 through November 2007, but that he was paid as if he we were working during that period. According to defendants, because Hartley's nearly-eight-month absence was unauthorized, DOE began to recoup the salary paid to him and did not disburse additional amounts to him in November and December of 2007. Here too, the record supports defendants' stated rationale for failing to pay Hartley during late

2007. Accordingly, we conclude that defendants have satisfied their burden of articulating a legitimate, nondiscriminatory reason for their actions.

### 3. Pretext

■ To successfully establish a claim for discrimination, Hartley "must then come forward with evidence that [defendants] proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000). Specifically, Hartley must come forward with "sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Id.*

Hartley makes a number of arguments in support of his assertion that the adverse employment actions were pretext for impermissible discrimination, including: (1) a general feeling that he has been subjected to race-based discrimination; (2) 26 African–American teachers and staff have left APRHS since 1995; and (3) Dominican–Americans in the DOE, including Superintendant Pena and Principal Rubio, have endeavored to replace African–American employees with staff of Dominican descent.

■ In the instant case, there is simply a lack of admissible evidence to support a rational finding that the defendants discriminated against Hartley. Specifically, Hartley must offer more than self-serving and conclusory allegations that the defendants' proffered reasons were false.[11] *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995) ("[M]ere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (internal quotations omitted).

■ Moreover, an employer's decisions are given deference by the court unless they are clearly pretextual. *See Deabes v. Gen. Nutrition Corp.*, No. 10–1742–cv, 415 Fed.Appx. 334, 336, 2011 WL 1054028, at *2 (2d Cir. Mar. 24, 2011) ("Even if the record, viewed in the light most favorable to [plaintiff], contains inconsistent testimony concerning [plaintiff's] purported lack of authorization for her vacation, this is insufficient to create a genuine issue of material fact, as [plaintiff] has pointed to no evidence that would permit a rational factfinder to infer that [defendant] was motivated by unlawful discriminatory intent."); *Lu v. Chase Inv. Servs. Corp.*, No. 10–208–cv, 412 Fed.Appx. 413, 417, 2011 WL 782226, at *4 (2d Cir. Mar. 8, 2011) ("[T]he evidence, taken in the light most favorable to [plaintiff], fails to demonstrate that [defendant's] decision to place [plain-

---

11. Hartley's arguments regarding a conspiracy to elevate Dominicans at the expense of African–Americans is conclusory and unsupported by admissible evidence. Similarly, Hartley's general allegations that he has been subjected to discrimination does not establish a genuine issue of material fact that will enable him to survive a motion for summary judgment. Finally, Hartley's argument that 26 African–Americans left APRHS over the course of more than a dozen years does not otherwise salvage his claim. According to Hartley's own documents, the staff at APRHS included approximately 100 teachers. (P. Ex. 68.) Assuming the teachers in fact left

APRHS, this alone fails to raise any viable argument that would enable the Court to conclude that the loss of approximately two African–African teachers per year is attributable to impermissible discrimination, as opposed to normal attrition from retirement, medical leave, pregnancy leave, or relocation, justified reasons for termination or reassignment, or any other conceivable personal reason. Even if the statistic, standing alone, had more impact, the absence of information about the applicant pool and/or the overall population of teachers to leave APRHS during the relevant time period precludes reliance on this data as meaningful evidence.

tiff] on Heightened Supervision was motivated by anything other than sound business practice. While [plaintiff] contends that she in fact fully complied with [defendant's] internal guidelines ... the possibility that [defendant's] placement of [plaintiff] on Heightened Supervision may have been erroneous does not, without evidence that it was a pretext for *discrimination,* satisfy her burden under *McDonnell Douglas.*") (emphasis in original).

Here, we have no direct evidence of discrimination by defendants, Hartley admits that Principal Rubio has not made any discriminatory statements, and he admits to insubordinate and disruptive conduct (albeit through post hoc efforts to justify his conduct). In such a scenario, we are loathe to second-guess the DOE's decision to reassign and terminate Hartley. *See Fahmy v. Duane Reade, Inc.,* No. 04 Civ. 1798(DLC), 2006 WL 1582084, at *7 (S.D.N.Y. Jun. 9, 2006) ("[I]t is not the function of a fact finder to second guess business decisions.") (citing *Dister v. Cont'l Grp., Inc.,* 859 F.2d 1108, 1116 (2d Cir.1988)). We are especially reluctant to engage in such second guessing where, as here, a plaintiff has failed to request, attend, or advocate for a reversal of the DOE's decision at a prior administrative hearing.

## B. Retaliation Claims

Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Title VII is violated when "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause." *Cosgrove v.* *Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993) (citations omitted). Such a claim is likewise subject to the *McDonnell Douglas* burden-shifting analysis. *Id.* at 1038–29 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

To establish a prima facie case of retaliation, an employee must show that (1) he "engaged in protected participation or opposition under Title VII ... (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse action." *Kessler v. Westchester County Dep't of Social Servs.,* 461 F.3d 199, 205–06 (2d Cir.2006). As in the context of a discrimination claim, if the plaintiff establishes a prima facie case, the defendant will have the burden of articulating a legitimate, non-retaliatory reason for the conduct, whereupon the burden will shift back to the plaintiff to introduce evidence disproving the legitimate reasons offered by the defendant. *Cosgrove,* 9 F.3d at 1039.

Hartley appears to contend that he was retaliated against for engaging in six activities: first, he submitted a letter dated November 29, 2004 in which he complained about discrimination at APRHS; second, he made a complaint to 311 about the unsanitary conditions of the restrooms at APRHS in March 2007; third, he fought back when Principal Rubio admonished him during parent-teacher conferences; fourth, he called the police and requested that they come to APRHS on March 22, 2007 after his confrontation with Rubio; fifth, on March 23, 2007, he requested that OSI investigate Rubio's conduct; and sixth, he filed a complaint with the EEOC in November 2007.

In the Title VII context, "a protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Wimes v. Health,* 157 Fed.Appx. 327, 328 (2d Cir.2005) (internal citations and quotations omitted). To establish that he engaged in a protected activity, Hartley "need only 'have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII.'" *Kessler,* 461 F.3d at 210 (quoting *McMenemy v. City of Rochester,* 241 F.3d 279, 285 (2d Cir.2001)).

Proof of causation can be shown: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000). Indeed, a plaintiff can indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action. *See Gorman–Bakos v. Cornell Co-op Extension,* 252 F.3d 545, 554 (2d Cir.2001).

Although this Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *id.* at 554, prolonged periods of time between the exercise of a right and the alleged retaliation will not suffice. *See Figueroa v. Weisenfreund,* 255 Fed.Appx. 595, 597 (2d Cir.2007) (fifteen-month gap too long to establish the requisite causal connection); *Morris v. Lindau,* 196 F.3d 102, 113 (2d Cir.1999) (two-year gap too long to establish requisite causal connection).

Moreover, where "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir.2001) (where adverse employment action due to deficient performance commenced five months prior to plaintiff's filing of an EEOC complaint, there could be no causal connection between plaintiff's complaint and his firing); *see also Deebs v. Alstom Transp., Inc.,* 346 Fed.Appx. 654, 657–58 (2d Cir.2009) (where adverse employment actions due to poor performance preceded plaintiff's filing of an EEOC complaint, no causal connection could arise despite temporal proximity); *Dixon v. Int'l Fed'n of Accountants,* 09 Civ. 2839(HB), 2010 WL 1424007, at *6 (S.D.N.Y. Apr. 9, 2010) ("[Plaintiff] was subjected to repeated critiques and complaints about her management and performance skills before she ever lodged any complaints about discrimination and, as such, her retaliation claim must be dismissed."), *aff'd,* 416 Fed.Appx. 107, 2011 WL 1086867 (2d Cir. Mar. 25, 2011).

Hartley has failed to establish a prima facie case of discrimination based on any of the above-mentioned activities.

First, Hartley cannot establish that the complaint to 311 regarding APRHS restrooms, the dispute with Principal Rubio, the call to the police, or the request for an OSI investigation were protected activities. As discussed above, protected activity in the context of a retaliation claim refers to a plaintiff's efforts to oppose statutorily-prohibited discrimination. Hartley's complaint about the sanitary condition of the restrooms at APRHS plainly does not constitute protected activi-

ty. Additionally, Hartley's purported effort to defend himself and his decision to call the police cannot be construed as protected activity. Hartley contemporaneously described each of these activities as a response to a purported assault, not as a response to discrimination, therefore undermining any argument that Hartley harbored a reasonable belief that he was opposing unlawful discrimination. Likewise, Hartley's request that OSI investigate Principal Rubio's actions cannot be construed as protected activity because the request contained no facts to suggest that the complaint was a response to impermissible discrimination by Rubio.

■■■■ Second, no causal connection exists between either the November 2004 complaint or the EEOC complaint and the adverse employment action. The November 2004 complaint pre-dated Hartley's reassignment by nearly twenty-eight months, and such duration of time is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action. By contrast, the EEOC complaint was filed in November 2007, nearly eight months after Hartley was transferred from his classroom to the reassignment center. Although Hartley was ultimately terminated after the EEOC complaint was filed, Hartley offers no direct evidence of retaliatory animus or disparate treatment. Thus, because timing is the only proffered grounds for causation, and because adverse employment action predated Hartley's filing of a complaint with the EEOC by nearly eight

months, we conclude that an inference of retaliation cannot arise.

Finally, even assuming that Hartley had established a prima facie case of retaliation, we again conclude that defendants had legitimate, nondiscriminatory reasons for the adverse employment actions. Likewise, we again conclude that Hartley has failed to offer evidence of pretext, let alone sufficient evidence to support a rational finding that the adverse employment action was pretext for unlawful discrimination.

### C. Hostile Work Environment Claim

■■■■ Under Title VII, a hostile work environment is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Brennan v. Metro. Opera Ass'n, Inc.,* 192 F.3d 310, 318 (2d Cir.1999) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). A hostile work environment claim requires a showing that: (1) the plaintiff was subjected to harassment, based on his protected class, that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment"; and (2) "that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.2002) (internal citation omitted).[12]

■■■■ To be "severe or pervasive," Hartley must show that the defendants' conduct: (1) was "objectively severe or

---

**12.** In the second amended complaint, Hartley fails to specify whether he is asserting a hostile work environment claim pursuant to Title VII, the NYSHRL, or the NYCHRL. We analyze the hostile work environment claim pursuant to all three statutes. Additionally, Hartley argues in his opposition papers that he has stated a prima facie case of "harass-ment," which Hartley contends is distinct from his hostile work environment claim. However, the second amended complaint contains no such cause of action and Hartley does not invoke a cognizable basis for this purported claim. Accordingly, we consider the harassment arguments when evaluating Hartley's hostile work environment claim.

pervasive—that is, ... create[d] an environment that a reasonable person would find hostile or abusive"; (2) created an environment that Hartley "subjectively perceive[d] as hostile or abusive"; and (3) was on account of Hartley's race or national origin. *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir.2007). Furthermore, objective severity is assessed based on a "totality of the circumstances," which may include: (1) frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *See id.* at 113; *see also Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 437 (2d Cir.1999).

 "[I]n order for racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity." *Richardson,* 180 F.3d at 437 (citing *Schwapp v. Town of Avon,* 118 F.3d 106, 110–11 (2d Cir.1997); *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986)) (internal citations and quotations omitted). However, although isolated incidents typically will not establish a hostile work environment, a single episode of harassment, if severe enough, can suffice. *Richardson,* 180 F.3d at 437; *see also La Grande v. DeCrescente Distrib. Co., Inc.,* 370 Fed. Appx. 206, 210 (2d Cir.2010).

 In opposition to defendants' motion for summary judgment, Hartley does not argue that he was subjected to race-based slurs or comments. Indeed, he concedes that no such comments were made by Principal Rubio or any of the relevant decision-makers. Rather, Hartley argues that the conduct constituting a hostile work environment included: false accusations made against him; the DOE's decision to suspend the payment of Hartley's salary and benefits in late 2007; the DOE's decision to reassign Hartley to the Reassignment Center; and the diminution of the complexity and prestige of Hartley's work assignments following his transfer to the Reassignment Center.

Even assuming these acts occurred and that Hartley could establish that these acts created an environment that a reasonable person would find hostile or abusive, there is no evidence in the record that these acts are on account of Hartley's race or national origin. *See, e.g., Blake v. Potter,* 330 Fed.Appx. 232, 234 (2d Cir.2009); *Marshall v. New York City Bd. of Elections,* 322 Fed.Appx. 17, 18–19 (2d Cir.2009).

Accordingly, we grant defendants' motion for summary judgment on each of the federal claims.[13]

## III. State and City Law Claims

### A. NYSHRL and NYCHRL Claims

 A plaintiff who brings a NYSHRL or NYCHRL claim against the DOE or its employees must comply with procedures specified in the New York Education Law. Specifically, a plaintiff must file a notice of claim within ninety days after the claim arises, plead that it has been served, allow thirty days to elapse after the notice is filed before filing a complaint, and show that in that time period the defendant has either neglected or refused to satisfy the

---

**13.** As noted above, Hartley has filed a cross motion for summary judgment. However, throughout his opposition papers, Hartley does not argue that summary judgment should be entered in his favor. Rather, he argues that there are issues of credibility that should be determined by the jury. We reject Hartley's argument that material issues of fact remain, and therefore grant summary judgment for defendants and deny Hartley's cross motion for summary judgment.

claim. *See* N.Y. Educ. Law § 3813(1); N.Y. Gen. Mun. Law § 50–e.

Additionally, a notice of claim must contain sufficient information to permit the municipality to conduct an adequate investigation of the allegations. Specifically, "[i]n determining the sufficiency of a notice of claim, the relevant inquiry is 'whether it includes information sufficient to enable the [municipality] to investigate the claim . . .'" *Cunningham v. New York City,* No. 04 Civ. 10232, 2008 WL 1944696, at *1 (S.D.N.Y. May 1, 2008) (quoting *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981)); *see also Ferlito v. County of Suffolk,* No. 06 Civ. 5708(DRH)(ART), 2007 WL 4180670, at *3–4 (E.D.N.Y. Nov. 19, 2007). Theories of liability not asserted in a notice may be dismissed in a subsequent lawsuit. *See Richards v. City of New York,* 433 F.Supp.2d 404, 431 (S.D.N.Y.2006).

Assuming a plaintiff has followed the proper procedures, claims under the NYSHRL are subject to the same burden-shifting analysis applied to claims under Title VII. *See Estate of Hamilton v. City of New York,* 627 F.3d 50, 55 (2d Cir.2010); *Spiegel v. Schulmann,* 604 F.3d 72, 80 (2d Cir.2010). Although this Circuit has traditionally subjected NYCHRL claims to the same analysis, *see Lu v. Chase Inv. Servs. Corp.,* No. 10–208–cv, 412 Fed.Appx. 413, 418–19, 2011 WL 782226, at *6 (2d Cir. Mar. 8, 2011); *Estate of Hamilton,* 627 F.3d at 55, recent cases acknowledge that the standard governing NYCHRL claims may be "broader" than the standard governing its state and federal counterparts— at least in connection with retaliation and hostile work environment claims. *See Dixon v. Int'l Fed'n of Accountants,* No. 10–1924–cv, 416 Fed.Appx. 107, 110 n. 1, 2011 WL 1086867, at *2 n. 1 (2d Cir. Mar. 25, 2011) (standard governing NYCHRL retaliation claims may be broader than the standard governing similar state or federal claims); *Fenn v. Verizon Commc'ns, Inc.,* No. 08 Civ. 2348(PGG), 2010 WL 908918, at *7 (S.D.N.Y. Mar. 15, 2010) (standard governing NYCHRL hostile work environment claims may be broader than the standard governing similar state or federal claims).

Defendants argue that Hartley has failed to comply with the proper procedures and note that the June 13, 2007 notice of claim appears to allege a claim for assault and battery and fails to include any factual allegations that would relate to a discrimination or retaliation claim. Hartley responds that plaintiff submitted a proper notice of claim and that, even if the June 13, 2007 notice did not suffice, Hartley's November 2007 EEOC complaint provided sufficient notice to defendants.

We agree with defendants. Hartley has failed to comply with the procedural requirements because his notice of claim only includes allegations relating to a cause of action for assault and battery. The notice of claim is devoid of allegations that would provide the City of New York with notice that Hartley intended to bring claims for discrimination and retaliation. Additionally, we are aware of no authority supporting the proposition that an EEOC complaint obviates the need to comply with the statutory notice requirement. Accordingly, we conclude that Hartley's NYSHRL and NYCHRL claims are not properly before us.

Alternatively, because we can analyze the NYSHRL and federal claims in tandem, we would dismiss the state claims for the reasons stated above. Additionally, even the NYCHRL claims must fail because the present record is devoid of any nonconclusory evidence of discrimination, retaliation, or of a hostile work environ-

ment attributable to Hartley's race or national origin.

### B. Common Law Claims

Hartley asserts state law claims for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent retention.

■■■ "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Consequently, "where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). Having dismissed Hartley's federal claims, this Court declines to exercise supplemental jurisdiction over Hartley's state law claims, which are dismissed without prejudice.

### IV. Motion to Amend

As briefly noted above, Hartley has filed a cross motion to amend the second amended complaint. The proposed amendment would add 87 new paragraphs, at least seven new defendants, and new theories of liability that are unrelated to the theories addressed herein.

As a threshold matter, defendants argue that we should deny Hartley's cross motion to amend by default. According to defendants, Hartley failed to file a memorandum of law in support of his cross motion, in violation of Local Rule 7.1(a), and that we are authorized to dismiss the cross motion for that reason alone.[14]

This argument requires a brief review of the procedural posture of this case. On

June 1, 2010, the Court endorsed a briefing schedule that was jointly proposed by the parties. That briefing schedule provided that defendants would file a motion for summary judgment on July 15, 2010 and that plaintiff's counsel would have 30 days to oppose defendants' motion and to file a cross motion for summary judgment. Thereafter, the Court granted three extensions to plaintiff's counsel and afforded her more than seven additional weeks to file her opposition and cross motion. On the morning after Hartley's opposition and cross motion were due, plaintiff's counsel filed a statement pursuant to Local Rule 56.1 opposing the defendants' motion for summary judgment, filed more than 100 exhibits, but requested a further extension of time to file a memorandum of law.

Upon receiving that request, the Court ordered plaintiff's counsel to file the memorandum of law forthwith and informed her that she should avoid further requests for extensions of time. More than a week later, plaintiff's counsel filed a cross motion for summary judgment and to amend the second amended complaint. However, she still had not filed a memorandum of law. Ultimately, two weeks after the extended deadline and more than nine weeks after Hartley's papers were originally due, plaintiff's counsel filed a memorandum of law and noted therein that "[a c]orrected copy with [a table of authorities] and annotations to affidavits, complaints, and exhibits to follow ASAP but elected to place present version on ECF ... Memorandum in support of Cross–Motion to follow[ ] shortly."

On October 20, 2010, the Court informed the parties via facsimile that, despite the

---

**14.** Local Rule 7.1(a) provides, in relevant part: "Except as otherwise permitted by the court, all motions and all oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion ... Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default."

lateness of Hartley's submissions, we would accept the documents filed to date. However, we stated that we would "accept no further submissions from plaintiff on this round of briefing," set a deadline for defendants to file a reply brief and opposition to the cross motion, and set a deadline for Hartley to file reply papers. On October 22, 2010, plaintiff's counsel filed a revised memorandum of law, which contained arguments in support of Hartley's cross motions. Because the filing flouted our recent orders, we struck the memorandum of law.

Defendants then filed a reply memorandum in support of their motion for summary judgment and papers opposing Hartley's cross motions. Thereafter, plaintiff's counsel filed reply papers in support of Hartley's cross motions. In the reply memorandum, plaintiff's counsel reproduced the substance of the stricken memorandum of law by pasting the content in the body of the document, employing miniscule type, and exceeding the page limits authorized by this Court's Individual Practices. Nevertheless, we accepted Hartley's reply memorandum.

Although we agree that plaintiff's counsel has failed to comply with Local Rule 7.1(a) and has otherwise flouted this Court's orders, we decline to reach this issue and instead address the broader question of whether we should grant leave to amend.

■ Leave to amend a complaint is granted at the district court's discretion and "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). However, courts may deny leave to amend on grounds of undue delay, prejudice to the opposing party, a plaintiff's repeated failure to cure deficiencies by amendments previously allowed, or where the proposed amendment would be futile.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■ Defendants argue that the cross motion to amend should be denied because the proposed amendment—which would add 87 paragraphs to the complaint, seven new defendants, and new theories of liability—is unduly delayed, will cause prejudice to the defendants, and is futile. We agree with each of these arguments.

Hartley's motion comes to us after undue delay. Specifically, the motion was filed nearly two-and-a-half years after the action was commenced, 16 months after the second amended complaint was filed, ten months after Hartley substituted counsel, seven months after the scheduled close of discovery, and five months after we denied an identical request to amend the complaint on the grounds that the proposed amendment would be futile.

We also agree that the proposed amendment would prejudice defendants. After two-and-a-half years of litigation and after the close of discovery, defendants would be obligated to engage in additional discovery regarding new theories, new facts, and new parties.

Finally, we agree that the proposed amendment would be futile. Among other things, the proposed amendment would include two new claims: first, that Hartley's due process and equal protection rights were violated in connection with his disciplinary hearing; and second, that the DOE violated his collective bargaining rights. These theories do little—if anything—to explain or justify the conduct that resulted in Hartley's reassignment, termination, or the recouping of his salary. Additionally, these theories are so far afield from the second amended complaint that we see no plausible scenario in which the new allegations, or the resulting discovery, would enable Hartley to make a showing that the

defendants actions were pretext for impermissible discrimination.

Moreover, defendants argue that the proper mechanism for a due process claim is an Article 78 proceeding in state court. We agree and thus conclude that the amendment would be futile for the additional reason that Hartley would not be permitted to raise his due process challenge in this forum. *See, e.g., Behrend v. Klein,* No. 04 Civ. 5413(NGG)(CLP), 04 Civ. 5414(NGG)(CLP), 2010 WL 627696, at *8 (E.D.N.Y. Feb. 22, 2010); *Piccoli v. Yonkers Bd. of Educ.,* No. 08 Civ. 8344(CS), 2009 WL 4794130, at *5 (S.D.N.Y. Dec. 11, 2009); *Felton v. Katonah Lewisboro Sch. Dist.,* No. 08 Civ. 9340(SCR), 2009 WL 2223853, at *6–7 (S.D.N.Y. July 27, 2009). This is true even where, as here, a plaintiff has failed to avail himself of an Article 78 proceeding. *Piccoli,* 2009 WL 4794130, at *5.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiff's cross motion for summary judgment and cross motion to amend the pleadings are denied.[15]

15. Hartley's request for oral argument is also denied. Plaintiff's counsel requested oral argument in Hartley's reply memorandum and stated that oral argument is "less imperative" if Hartley's reply memorandum were accepted by the Court for filing. Because we accept Hartley's reply memorandum, because plaintiff's counsel has had more time and more space to advance Hartley's argument than otherwise permitted by our Local Rules, and because granting oral argument is discretionary, we decide the instant motions based on the parties' written submissions.